UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>MOUNIR MRABET,<br><br>Defendant. | 23-cr-69 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

Mounir Mrabet faces a superseding indictment on one count of narcotics conspiracy, two counts of narcotics distribution, and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF No. 10. Mrabet has pleaded not guilty, and on August 4, 2023, he moved for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), regarding the potential suppression of evidence from four search warrants that he argues contained materially false statements and omissions. ECF No. 17 ("Motion"). The Government submitted an opposition on August 22, 2023, ECF No. 19 ("Opp."), and Mrabet filed a reply on August 29, 2023, ECF No. 20 ("Reply"). The Court denied the motion by "bottom-line order" on September 12, 2023. ECF No. 23. This opinion reconfirms and provides reasoning for that ruling.

As explained below, Mrabet has not supported his allegations with anything more than a conclusory assertion that the affiant of the search warrant applications made misstatements or omissions

intentionally or with reckless disregard for the truth. Moreover, even if Mrabet had made a substantial preliminary showing that the affiant had such a state of mind, the challenged misstatements or omissions were not material to the probable cause determination for any of the challenged warrants.

## I. Factual Background

On July 30, 2022, three people overdosed on narcotics in a room at the Grand Hyatt Hotel in Manhattan. Motion, Ex. A, Ex. F at 5. Two of the individuals died. Motion, Ex. F, at 5. After interviewing the survivor and other witnesses, law enforcement learned that those who overdosed had used cocaine with three others in the hotel room. Id. One member of the group had checked into the hotel room on July 28, 2022 and discovered a bag of powder in the hotel room closet. Id.; Motion, Ex. B. Several members of the group then snorted the powder. Motion, Ex. F, at 5.

Mounir Mrabet became a person of interest on August 4, 2022, after law enforcement received information about him from a confidential source ("CS-1"). Id.; ECF No. 17-1 ("Abate Decl."), ¶ 7. In particular, CS-1 told law enforcement that Mrabet had sold fentanyl and crystal methamphetamine near and inside the Grand Hyatt Hotel. Motion, Ex. F, at 5; Abate Decl. ¶ 7. CS-1 also told law enforcement that CS-1 had accompanied Mrabet on at least one

occasion to a storage unit that Mrabet rented at Gotham Mini Storage and saw narcotics inside the unit. Motion, Ex. F at 5.

On August 11, 2022, New York City Police Department Detectives Carlos Perez and Joseph Aliberti spoke to the assistant manager of the Grand Hyatt, and each wrote separate follow-up reports. Abate Decl. ¶ 9; Motion, Exs. C-D. Detective Perez reported that Mrabet had stayed in the same hotel room where the overdose occurred, checking in on July 23, 2022 and checking out on July 25, 2022. Motion, Ex. C. Detective Aliberti reported that Mrabet was the last person to occupy that hotel room before the group that overdosed on July 30, 2022. Motion, Ex. D. On August 23, 2022, Detective Aliberti visited the Gotham Mini Storage location that CS-1 had identified. Motion, Ex. E. Employees of the facility told Detective Aliberti that Mrabet rented three storage units and received packages there. Id.

**A. The Storage Unit Warrant**

On September 28, 2022, Detective Mark Gurleski, a task force officer with the U.S. Attorney's Office for this District, applied for a search warrant for two of Mrabet's storage units at Gotham Mini Storage. Motion, Ex. F. Detective Gurleski's supporting affidavit explained that, earlier that day, a Gotham Mini employee had discovered one of the units with its door open. Id. at 3, 5. According to the affidavit, the employee entered the unit "to

ascertain whether something was wrong, and at that point identified pills that were visible in plain view inside the unit." Id. at 6. The employee notified an NYPD detective and sent the detective photographs of the pills and another substance inside an open container. Id. at 6. Detective Gurleski wrote in the affidavit that, based on his training and experience, he believed "the appearance of the pills to be consistent with counterfeit oxycodone pills laced with fentanyl," and believed "the appearance of the second substance to be consistent with crystal methamphetamine." Id. at 6.

Detective Gurleski's affidavit also described the overdose at the Grand Hyatt Hotel on July 30, 2022 and relayed the information from CS-1 about Mrabet and his storage unit. Id. at 5. In addition, the affidavit stated, "From hotel reservation records, I know that the individual who rented the Hotel room immediately prior to the individuals in the group was Mrabet Mounir." Id. The affidavit made no mention of Detective Aliberti's visit to Gotham Mini Storage on August 23, 2022.

A magistrate judge signed the warrant and law enforcement carried it out the same day. Id. at 11. The search recovered approximately 183 blue fentanyl pills and, inter alia, small quantities of additional fentanyl, methamphetamine, and cocaine. Motion, Ex. H, at 11-12.

**B. The Undercover Purchase**

On September 30, 2022, an undercover police officer purchased $1,600 worth of fentanyl and methamphetamine from Mrabet and made a video recording of the purchase. Motion, Ex. H, 12-13. Lab testing of the drugs showed that they included approximately 11.451 grams of pills containing a detectable amount of fentanyl and a separate substance containing approximately 119.8 grams of pure methamphetamine hydrochloride. Id. at 13.

**C. The "Pen-Ping" Warrant**

On October 28, 2022, Detective Gurleski submitted a search warrant application for Mrabet's cell site location information and pen register information. See Motion, Ex. G. That warrant application included and incorporated by reference Detective Gurleski's supporting affidavit for the storage unit warrant application. See Abate Decl. ¶ 25; Opp. at 6-7.[1] A magistrate judge signed the warrant on November 3, 2022. Id. at 4.

**D. The iCloud Warrant**

On December 20, 2022, Detective Gurleski submitted -- and a magistrate judge signed -- a third search warrant application, for access to the iCloud server associated with Mrabet's phone. Motion,

---

[1] Although both parties agree that the pen-ping warrant application incorporated by reference the supporting affidavit for the storage unit warrant application, the parties did not submit as an exhibit the affidavit for the pen-ping warrant itself.

Ex. H. Like the storage unit and pen-ping warrant applications, the supporting affidavit stated that Mrabet had occupied the hotel room where the overdose occurred "immediately prior to the individuals" who overdosed. Id. at 11. Similarly, the affidavit described the photographs that Gotham Mini Storage employees sent of Mrabet's open storage unit, though it failed to mention that Detective Aliberti had previously visited the storage facility to inquire about Mrabet. Id. at 11-12. The affidavit also listed the narcotics that law enforcement had discovered while executing the storage unit warrant. Id. Finally, the affidavit described the video-recorded undercover purchase of $1,600 of fentanyl and methamphetamine from Mrabet. Id. at 12-13.

**E. The Residence Warrant**

On January 4, 2023, Detective Gurleski submitted -- and a magistrate judge signed -- a search warrant application for Mrabet's residence and an additional storage unit. Motion, Ex. I. The supporting affidavit described the narcotics that law enforcement discovered when executing the storage unit warrant, but once again did not mention that Detective Aliberti had visited the storage facility to inquire about Mrabet. Id. at 4-5.

The application enclosed, but did not incorporate, the supporting affidavit for the storage unit warrant application. Id. at 4-5 n.1. Instead, Detective Gurleski corrected and clarified

his statements in the storage unit warrant affidavit about Mrabet's stay at the Grand Hyatt Hotel. Id. Detective Gurleski wrote:

> Specifically, after reviewing hotel records that a hotel employee pulled up on a computer, I attested that, "[f]rom hotel reservation records, I know that the individual who rented the Hotel [R]oom immediately prior to the individuals in the group" is MRABET. Storage Unit Warrant Affidavit ¶ 7(c).
>
> On or about January 2, 2023, I revisited the hotel and spoke to the same employee to obtain documentation confirming that MRABET occupied the Hotel Room immediately prior to the decedents, but she indicated that the computer system now showed that another guest had occupied the Hotel Room in between MRABET checking out and the decedents' use of the Hotel Room. When asked, she was not able to explain why the information had not been previously available in the hotel computer system. Notwithstanding this new information, I believe that the Storage Unit Warrant set out sufficient probable cause to believe that the MRABET had committed the Subject Offenses and that the storage units reserved in his name contained evidence, fruits and instrumentalities of the Subject Offenses.

Id. (alterations in original). In addition, the affidavit described the video-recorded undercover purchase of $1,600 worth of fentanyl and methamphetamine from Mrabet on September 30, 2022. Id. at 5-8.

## II. Legal Standard

"To be entitled to a Franks hearing, a defendant must make a substantial preliminary showing of (1) falsity, that a false statement . . . was included by the affiant in the warrant affidavit, (2) knowledge, that the affiant made the allegedly false statement knowingly and intentionally, or with reckless disregard

for the truth, and (3) materiality, that the allegedly false statement is necessary to the finding of probable cause." United States v. Sandalo, 70 F.4th 77, 85 (2d Cir. 2023) (ellipses in original).[2]

"[T]he burden imposed by the 'substantial preliminary showing' standard [is] a heavy one that requires more than a mere conclusory showing." Id. at 86. "A defendant is required to make allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." Id. at 85 (ellipses in original). Defense counsel's "mere desire to cross-examine" does not suffice. Id.

"With respect to knowledge, allegations of negligence or innocent mistake are insufficient." Id. "As for materiality, the alleged falsehood or omission should be set aside and the remaining portions of the affidavit should be reviewed . . . to determine if probable cause still exists." Id. (ellipses in original). "If after doing so there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. "But if the remaining content is insufficient, the defendant is entitled . . . to a hearing." Id. (ellipses in original).

"Probable cause requires a fair probability that contraband or evidence of a crime will be found in a particular place." United

[2] Here and elsewhere, internal quotation marks and citations are omitted unless otherwise indicated.

States v. McKenzie, 13 F.4th 223, 236 (2d Cir. 2021). "When the available facts would warrant a person of reasonable caution to believe that contraband or evidence of a crime is present, an officer has probable cause to conduct a search." Id. The Court must "consider the totality of the circumstances in making probable cause assessments," avoiding "rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." Id.

"Fourth Amendment principles governing searches and seizures apply only to governmental action and are thus wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." United States v. DiTomasso, 932 F.3d 58, 67 (2d Cir. 2019). "[P]rivate actions are generally attributable to the government only where there is a sufficiently close nexus between the State and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself." Id. at 67-68 (ellipses in original). "The requisite nexus is not shown merely by government approval of or acquiescence in the activity." Id. at 68. Rather, it must be "that the government is responsible for the specific conduct of which the accused complains." Id. (emphasis in original).

## III. Discussion

Mrabet argues that a Franks hearing is necessary because each of the four challenged search warrants contained two material falsehoods -- one an affirmative statement, the other an omission. First, Mrabet notes, the affidavits supporting the storage unit warrant, pen-ping warrant, and iCloud warrant "mischaracterized the defendant as the hotel guest last occupying [the hotel] room before the deceased guests occupied it." Abate Decl. ¶¶ 11, 22, 27. Although Detective Gurleski's affidavit in support of the residence warrant corrected that mischaracterization, Mrabet contends that the correction itself "contained several additional misstatements." Id. ¶ 32. Second, in discussing the photographs of Mrabet's open storage unit sent by Gotham Mini Storage employees, all four challenged warrants omitted the fact that Detective Aliberti had previously visited the storage facility and, Mrabet alleges, also omitted the fact that employees "entered the storage unit as agents of the police" because they were "deputized" by Detective Aliberti. Id. ¶¶ 16-20.

**A. Misstatement About Mrabet's Hotel Stay**

Mrabet is not entitled to a Franks hearing about the mischaracterization that Mrabet stayed in the hotel room in question "immediately prior" to the guests who overdosed. Mrabet has not made a substantial preliminary showing that Detective Gurleski made the misstatement intentionally or with reckless

disregard for its truth. Moreover, even if Mrabet had made such a showing, the misstatement was immaterial because it was not necessary for a finding of probable cause for any of the challenged warrants.

Mrabet's allegations of Detective Gurleski's mental state make no "more than a mere conclusory showing" of intent or recklessness regarding the timing of Mrabet's hotel stay. Sandalo, 70 F.4th at 86. Mrabet makes a bare assertion that Detective Gurleski's mischaracterization must have been "designed to mislead," Motion at 3, because Detective Gurleski "had reason to know it was not true," Abate Decl. ¶ 23. But alleging that an affiant "had reason to know" a fact was untrue, id., makes no showing that the affiant acted with anything other than "negligence or [by] innocent mistake." Sandalo, 70 F.4th at 85.

Indeed, it was Detective Gurleski himself who corrected the mischaracterization when, in his affidavit supporting the residence warrant application, he explained the discrepancy. See Motion, Ex. I, at 4-5 n.1 ("On or about January 2, 2023, I revisited the hotel and spoke to the same employee to obtain documentation confirming that MRABET occupied the Hotel Room immediately prior to the decedents, but she indicated that the computer system now showed that another guest had occupied the Hotel Room in between MRABET checking out and the decedents' use of the Hotel Room. When asked, she was not able to explain why the information had not

been previously available in the hotel computer system."). Mrabet has not made a substantial preliminary showing of Detective Gurleski's mental state by urging the Court to make the speculative inference that Detective Gurleski intentionally provided false information about the timing of Mrabet's hotel stay -- or provided such information with reckless disregard for its truth -- in the first three challenged warrant applications, all of which were approved, only to reverse course by correcting himself in the residence warrant application.

Mrabet asserts that even the corrected statement was false because the true timing of his hotel stay "was not only in the hotel reservation records computer but was provided at the August 11 interview." Abate Decl. ¶ 32. Mrabet is referring to the follow-up report by Detective Perez, who spoke with the hotel's assistant front manager on August 11, 2022. But that report says only that "[t]he last time Mrabet, Mounir checked in the hotel was on July 23, 2022 and checked out July 25, 2022." Abate Decl. ¶ 10 (quoting Motion, Ex. C). It says nothing about whether any other guest stayed in the same room in between when Mrabet checked out on July 25 and a member of the group that overdosed checked in on July 28. Moreover, another report from August 11, prepared by Detective Aliberti, <u>does</u> state that the assistant front desk manager informed law enforcement that the hotel room in question "was last occupied by Mrabet, Mounir." <u>Id.</u> ¶ 11. The August 11 reports thus do not

suggest that Detective Gurleski's corrected statement was false. If anything, they undercut Mrabet's assertion that -- at the time of the first three challenged warrant applications -- Detective Gurleski had any reason to know that his statement about the timing of Mrabet's hotel stay was a mischaracterization.

Mrabet also asserts that the correction falsely stated that "Detective Gurleski . . . reviewed hotel records that a hotel employee pulled up on a computer before making the assertion that the individual who rented the Hotel Room immediately prior to the individuals in the group is MRABET." Id. ¶ 33. As Mrabet points out, the only police reports from August 11 -- when law enforcement spoke with the Grand Hyatt assistant front manager -- are from Detectives Perez and Aliberti, not Gurleski. Id. ¶¶ 10-11.

But Mrabet makes no argument for why it is material to probable cause whether Detective Gurleski initially reviewed the hotel records himself or whether he relied on the reports from Detectives Perez and Aliberti in his affidavits for the first three warrant applications. Moreover, on January 2, 2023, Detective Gurleski memorialized his follow-up conversation with the Grand Hyatt employee -- the subject of the corrected statement in the residence warrant application -- in which he learned that a different hotel guest occupied the room in question between Mrabet and the group that overdosed. Opp., Ex. A; see id. ("The representative did not have an explanation as to why this

reservation did not appear in their records when we initially asked in the beginning of the investigation. She stated it was likely a computer issue as their system is old and frequently malfunctions.”).

Moreover, even assuming arguendo that Detective Gurleski intentionally or recklessly mischaracterized the timing of Mrabet’s hotel stay in the first three challenged warrant applications, that mischaracterization would still not be material. It was not “necessary to the finding of probable cause” that Mrabet stayed in the hotel room right before the group that overdosed rather than, as the parties agree was actually the case, three days before the group. Sandalo, 70 F.4th at 85. The Court agrees with the Government that “[a]djusting the statement to reflect [that] the defendant occupied the room ‘prior to’ the decedents would result in a statement that still supports, and certainly does not undermine, probable cause.” Opp. at 27. “The defendant’s occupancy of the hotel room prior to the check-in of one of the decedents is the key fact, and is significant when combined with other remaining facts: other hotel occupants’ discovery and use of powder from the closet, the mass fentanyl-related overdose incident that followed, and information from a confidential source about the defendant’s fentanyl activities.” Id. (emphasis added). Either way, “[t]he point is that the

defendant was suspected of leaving narcotics inside the closet of a room that he had recently occupied." Id.

Moreover, even if the Court were to entirely scrub the statements about Mrabet's hotel stay from Detective Gurleski's affidavits, the information from CS-1 -- who informed law enforcement that Mrabet sold drugs in and outside the Grand Hyatt Hotel and who personally observed drugs in Mrabet's storage unit -- would have been enough for probable cause to search the storage unit, which was the first warrant application. At that point, the later warrant applications validly included the fact that the storage unit search had uncovered narcotics. In addition, days after Mrabet's storage unit was searched, an undercover officer purchased $1,600 worth of fentanyl and methamphetamine from Mrabet, a fact that was included in the iCloud and residence warrant applications and that also would have sufficed for probable cause for those warrants independent of the challenged misstatement.

**B. Omission of Detective Aliberti's Visit to the Storage Facility**

Mrabet is similarly not entitled to a Franks hearing about the omission of Detective Aliberti's visit to the storage facility. Mrabet's allegations on that score are either speculative or conclusory, or in any case immaterial. Mrabet asserts that "[t]he employees entered the storage unit as agents of the police" because

Detective Aliberti's visit "deputized the storage facility employee(s) to enter the defendant's storage unit without his consent and take pictures of possible contraband -- circumventing Fourth Amendment concerns." Abate Decl. ¶¶ 18-19. "This deputizing of the employees was wholly omitted from the search warrant application" and would mean that the affidavit's statement that the storage facility employees entered "to ascertain whether something was wrong" was false. Id. ¶ 20.

But Mrabet makes no "offer of proof" at all, let alone a "substantial preliminary showing," of the allegation that Detective Aliberti "deputized" the storage facility employees or that the employees entered Mrabet's unit as agents of the police. Sandalo, 70 F.4th at 85. Mrabet has provided no basis to infer that Detective Aliberti told the employees to enter Mrabet's storage unit without consent. Mrabet does not contest that his storage unit was open and unattended for at least a full day, which would provide sensible reason for the employees to enter "to ascertain whether something was wrong." Abate Decl. ¶ 20.

Nor does Mrabet make any argument that the omission of Detective Aliberti's visit would be material in the absence of any deputization. Instead, Mrabet emphasizes that "a landlord has no right to access a lessee's property without notice to the lessee." Reply at 1. True as that may be, a search conducted "by a private individual not acting as an agent of the Government" is not a

Fourth Amendment concern, DiTomasso, 932 F.3d at 67, and thus cannot be a basis for suppression. It would not be enough even for Mrabet to allege "government approval of or acquiescence in the" employees' search; rather, Mrabet must have made a substantial preliminary showing that "the government is responsible for" the search. Id. at 68 (emphasis in original). He has not done so.

Finally, even if the Court were to strike from Detective Gurleski's affidavits any mention of the photographs from the storage facility employees (as well as the challenged statement about the timing of Mrabet's hotel stay), the warrant applications would still have been supported by probable cause. As described above, the storage unit warrant application relayed information from CS-1, the confidential source who described that Mrabet sold drugs in and near the Grand Hyatt Hotel and who claims to have personally observed drugs inside Mrabet's storage unit. It was thus not "necessary to the finding of probable cause" that the storage facility employees also observed drugs in the unit. Sandalo, 70 F.4th at 85. And, once again, the independent basis for probable cause is even stronger for the later warrant applications, which mentioned that law enforcement had discovered drugs while executing the storage unit warrant and that an undercover officer had purchased drugs from Mrabet.

## IV. Conclusion

For the reasons explained above, the Court hereby reaffirms its prior ruling that Mrabet's motion for a Franks hearing must be, and hereby is, denied.

SO ORDERED.

New York, NY
September 29, 2023

JED S. RAKOFF, U.S.D.J